Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4757 | **DATE** | 8/21/2001 |
| **CASE TITLE** | Nanda vs. The Bd. of Trustees of U. of IL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to dismiss the Title VII claims (Count I) for lack of jurisdiction is denied. Their motion to dismiss claims under Count II is granted with respect to damages claims, but denied with respect to the request for injunctive relief. Defendant Prabhakar's motion to dismiss Count III (Doc. No. 54-1) is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | AUG 22 2001 date docketed | | 79 |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | FD-7 FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| | | | 01 AUG 21 PM 5:37 | date mailed notice | |
| ETV | courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NAVREET NANDA, PH.D., | ) | |
| | ) | DOCKETED |
| Plaintiff, | ) | AUG 2 2 2001 |
| | ) | |
| v. | ) | No. 00 C 4757 |
| | ) | |
| THE BOARD OF TRUSTEES OF THE | ) | Judge Rebecca R. Pallmeyer |
| UNIVERSITY OF ILLINOIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Navreet Nanda has brought this action against the Board of Trustees of the University of Illinois and University officials. Nanda alleges that Defendants violated her constitutional rights and discriminated against her on the basis of her sex, her race, and her national origin by discharging her from her position as a professor at the University's College of Medicine. In Count I of her complaint, Plaintiff invokes Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(2)(a)(1) and (2). In Count II, she alleges claims against the individual Defendants under 42 U.S.C. § 1983 for deprivation of her equal protection rights. Count III is a common law tort claim in which Plaintiff alleges that Defendant Bellur Prabhakar, the chairman of her department, intentionally interfered with her contractual relationship with the University.

Defendants have moved to dismiss all three counts. For the reasons discussed below, the motion is granted in part and denied in part.



## Count I: Title VII

Defendants argue, first, that the court should dismiss Count I pursuant to FED. R. CIV. P. 12(b)(1) because Plaintiff's Title VII claims against the state officials are barred by the Eleventh Amendment. By extending Title VII coverage to the states with respect to sex, race, and national origin discrimination, Defendants argue, Congress exceeded its authority under Section 5 of the Fourteenth Amendment. Defendants' argument relies heavily on recent decisions of the United States Supreme Court sustaining constitutional challenges to the exercise of congressional power. (Defendants' Memorandum in Support of Motion to Dismiss ("Defendants' Memo"), at 5,6.) *See United States v. Lopez*, 514 U.S. 549 (1995) (striking down a federal law criminalizing the possession of guns near schools); *Prinz v. United States*, 521 U.S. 898 (1997) (striking down a law requiring local police to conduct background checks on gun purchasers); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996) (striking down a law that permitted Indian tribes to sue states on claims relating to casinos); *United States v. Morrison*, 529 U.S. 598 (2000) (striking down provisions of the Violence against Women Act which authorized suit by rape victims against their attackers).

In particular, Defendants emphasize cases in which the Court has invalidated laws that permit suits against states for age discrimination and discrimination based on disability. In *Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000), the Court concluded that Congress exceeded its authority under section 5 of the Fourteenth Amendment to enact "appropriate legislation" when it enacted legislation that

permitted a state worker to sue the state for age discrimination. More recently, in *Trustees of the University of Alabama v. Garrett*, 531 U.S. 356 (2001), the Court reached the same conclusion with respect to the Americans with Disabilities Act, holding that Congress lacked evidence of any pattern of irrational state discrimination in employment against the disabled adequate to support exercise of its section 5 power. In Defendants' view, if the Supreme Court were to address the issue, it would reach the same conclusion with respect to race, sex, and national origin discrimination: that the legislative record before Congress in 1972, when it amended Title VII to broaden its coverage to the states, was insufficient to establish any broad pattern of such discrimination on the part of state employers. (Defendants' Memo, at 9.)

This court does not write on a clean slate concerning this issue. In *Fitzpatrick v. Bitzer*, 427 U.S. 445, 447 (1976), the Supreme Court concluded that in the 1972 Amendment to Title VII of the Civil Rights Act of 1964, "Congress, acting under § 5 of the Fourteenth Amendment, authorized federal courts to award money damages . . . against a state government . . . ." Defendants here nevertheless argue that *Fitzpatrick* did not decide whether the substantive provisions of Title VII were in fact a proper exercise of Congressional authority. (Defendants' Reply Memorandum, at 9.) Since *Fitzpatrick*, however, the Courts of Appeals have held consistently that the 1972 and 1991 amendments to the Civil Rights Act *do* abrogate the States' immunity and permit claims for damages against the States. *See Holman v. State of Indiana*, 211 F. 3d 399, 402 n. 2 (7th Cir. 2000) (sex harassment claims against state employer are permitted)

3

(citing *Fitzpatrick*, 427 U.S. at 448-49; *Velasquez v. Frapwell*, 160 F.3d 389, 395 (7th Cir.1998) ("The Eleventh Amendment is no bar to Velasquez's claim of national-origin discrimination [against Indiana University], a claim founded on a statute (Title VII) that is clearly within the scope of section 5 of the Fourteenth Amendment.") *vacated in part on other grounds*, 165 F.3d 593, 594 (7th Cir. 1999); *Winbush v. Iowa*, 66 F.3d 1471, 1483 (8th Cir. 1995) (award of prejudgment interest against state employer authorized by 1991 Amendments to Title VII); *Greenwood v. Ross*, 778 F.2d 448, 452-53 (8th Cir. 1985) (1972 Act) ("the district court erred in dismissing the Title VII [retaliation] claim against the [state university] Board of Trustees as barred by the eleventh amendment."); *Johnson v. University of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000) (race and national origin discrimination case against state university not barred by Eleventh Amendment); *In re Employment Discrimination Litig. Against the State of Alabama*, 198 F.3d 1305, 1316-17 (11th Cir. 1999); *Ussery v. Louisiana*, 150 F.3d 431, 434-35 (5th Cir. 1998); *Cerrato v. San Francisco Cmty. College Dist.*, 26 F.3d 968, 975-76 (9th Cir. 1994) (Eleventh Amendment does not bar race discrimination claims against a college which is a state instrumentality).

Defendants are unmoved by the weight of this authority. They argue that the Title VII amendments do not meet the two-part test set forth in *Kimel* and *Garrett* and other recent decisions, which requires a showing of (i) congruence and proportionality; and (ii) legislative findings of a history of discrimination, in order to support the conclusion that Eleventh Amendment immunity is abrogated. Defendants appear to

believe that, if the issue came before the Supreme Court again, the Court would find no support in the legislative record for such a broad exercise of power. The Supreme Court itself has cautioned against such reading in the tea leaves. In *Agostini v. Felton*, 521 U.S. 203 (1997), the Court reminded lower courts that the business of revisiting precedent is for the Court that established that precedent:

> [If] a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions.

*Id.* at 237 (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989). This court is unwilling to reconsider whether the Congressional record is adequate to support the Supreme Court's conclusion in *Fitzpatrick*. Significantly, in order to do so, the court would be required to ignore language from our own Court of Appeals: In a decision rendered after *Kimel*, the Seventh Circuit adhered to its precedents and concluded, albeit in *dicta*, that the Eleventh Amendment does not bar a pay discrimination claim brought by female faculty against Illinois State University. *Varner v. Illinois State Univ.*, 226 F.3d 927 (7th Cir. 2000). For the same reasons that the Courts of Appeals must follow controlling decisions from the Supreme Court, this court is bound to adhere to the precedents established by the Seventh Circuit. *See Pickett v. Prince*, 52 F. Supp.2d 893, 904 (N.D. Ill. 1999) ("a federal district court is required to give great weight to the pronouncements of its Court of Appeals, even though those pronouncements appear by way of dictum.") (quoting *Max M. v. Thompson*, 585 F. Supp. 317, 324 (N.D. Ill. 1984)).

5

In any event, although our Court of Appeals has not addressed the issue since the Supreme Court decided *Garrett*, this court does not share Defendants' confidence that *Garrett* will turn the tide in their favor on this issue. One other Court of Appeals has carefully considered the matter, post-*Garrett*, in a case very similar to this one, involving female professors who brought race and sex discrimination claims against a state university. In *Okruhlik v. University of Arkansas*, 255 F.3d 615 (8th Cir. 2001), the Eighth Circuit overruled the University's Eleventh Amendment objection to its jurisdiction, citing *Fitzpatrick* as controlling authority. The court also cited *Agostini* as the basis for its refusal to reconsider the issue, but observed, "If we were free to reconsider *Fitzpatrick* and our prior case law, our study would lead us to conclude that Congress unmistakably expressed its intent in the 1972 Act to subject states to suits under Title VII." 255 F.3d at 622. The Eighth Circuit proceeded to review the history of the 1972 amendments to Title VII in detail and concluded that both prongs of the test for valid abrogation of Eleventh Amendment immunity are met. *See also Maitland v. Univ. of Minn.*, No. 00-2192, 2001 WL 914196 (8th Cir. Aug. 15, 2001).

This court, persuaded by *Okruhlik* and the authorities cited therein, concludes that it may, consistent with the Constitution, exercise jurisdiction over Professor Nanda's Title VII claims. Defendants' motion to dismiss Count I is denied.

**Count II: Section 1983 Equal Protection Claim**

In Count II, Plaintiff alleges that Defendant Bellur Prabhakar treated her differently and "took adverse actions against her public employment at UIC" in

violation of her Constitutional right to the equal protection of the laws. (Complaint ¶ 23.) She alleges that Defendants Moss, Hoffman, Broski, and Stukel "facilitated, approved, or turned a blind eye to Prabhakar's actions." (*Id.* ¶ 24.) Plaintiff seeks injunctive relief as well as compensatory and punitive damages against the individual Defendants pursuant to 42 U.S.C. § 1983. (*Id.* ¶¶ 32-34, 36.)

Section 1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Defendants seek dismissal of Count II on grounds that, while Prabhakar, Moss, Hoffman, Broski and Stukel are persons, they are state officials named in their official capacities. The Supreme Court has held that a lawsuit under § 1983 against state officials constitutes a suit against the State itself, and that neither a State nor its officials acting in their official capacities are "persons" under § 1983 for purposes of damage awards. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985); *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985)). The Court acknowledged in *Will* that a claim for injunctive relief may properly be brought against state officials, however. 469 U.S. at 471 n.10 (citing *Kentucky v. Graham*, 473 U.S. at 167 n.14).

Defendants are correct that, under this authority, Plaintiff's claim for damages

against the individual Defendants must be dismissed. Where, as in this case, the complaint does not specify whether Defendants are being sued in their individual or their official capacities, the court ordinarily will construe the complaint as raising only official capacity claims. *See Stevens v. Umsted*, 131 F.3d 697, 706 (7th Cir. 1997). The court recognizes its discretion to interpret a claim as against an official in his or her individual capacity if the actions of the parties, since the filing of the complaint, demonstrate that they assume this to be the case. *See Stevens*, 131 F.3d at 706. The parties' conduct in this case suggests they did not make this assumption, however. The individual Defendants are all represented by the same attorneys who represent the University Board of Trustees. If the Defendants believed they faced individual liability for compensatory damages, the court expects that they might well have sought independent representation. Plaintiff's request for an award of punitive damages only reinforces this court's concern that defense strategy and interest might well differ from one of the individual Defendants to another.

In her memorandum in opposition to the motion to dismiss, Plaintiff requests that, if the court determines that she has not stated individual capacity damages claims, she be granted leave to file an amended complaint to assert such claims. (Plaintiff's Response Memorandum, at 10-11.) Although a motion for leave to amend is not formally before the court, the court notes that the concerns outlined above render the court reluctant to entertain such an amendment at this stage. It is Plaintiff who has pressed for an early trial date and objected to Defendants' frequent entreaties for continuance. If the complaint were to be amended to assert damages claims against

8

the individual Defendants, the court would be required to consider whether the change in their potential liability requires the court to permit additional time for preparation of defense and potential consultation with independent counsel.

Defendants' motion to dismiss individual damages claims in Count II is granted. Plaintiff's claim for injunctive relief in this count will stand.

## Count III: Interference with Employment Relationship

In Count III of her complaint, Plaintiff alleges a pendent state law tort claim against Defendant Bellur Prabhakar for "international interference . . . with her employment relationship" with the University. Defendants argue this count fails to state a claim for relief because (1) Plaintiff did not in fact have a contractual employment relationship with the University; (2) there are no allegations that Dr. Prabhakar directed any action toward a third party; and (3) Prabhakar's alleged wrongful acts did not cause her discharge. (Defendants' Memorandum, at 16-18, 19, 20.) They argue, further, that this interference claim is "inextricably linked" to her claims of discrimination and is therefore preempted by the Illinois Human Rights Act. *See Maksimovic v. Tsogalis*, 177 Ill.2d 511, 517, 687 N.E.2d 21, 23 (1997); *Geise v. Phoenix Co. of Chicago, Inc.*, 159 Ill. 2d 507, 639 N.E.2d 1273 (1994).

In her response to the motion, Plaintiff explains that "Count III is based solely on the existence of the contract . . . which consisted of a promise to specific space for as long a time as Plaintiff was employed by UIC." (Plaintiff's Response Memorandum, at 15.) She cites a May 7, 1996 letter from Dr. Philip Matsumura, Dr. Prabhakar's predecessor as department head, in which Dr. Matsumura refers to "the terms of the

9

[employment] offer," and specifically lists "Lab/Office Space," identifying "Room E-709" and "room E-709A" as the office and lab space he expected she would occupy. (Matsumura letter of 5/7/96, Ex. A to the Complaint.) The court has difficulty understanding Dr. Matsumura's reference to office and lab space as an independent contract between Plaintiff and the University. Plaintiff could only be expected to occupy office and lab space if she were employed as a University professor. Nor will the court accept the suggestion that assignment to Room E-709 was a condition of her employment relationship; surely Plaintiff would not argue that a decision on the part of the University to move the department from one building or floor to another at any point would constitute a breach of her employment contract.

The court need not reach the question of whether Plaintiff has adequately alleged the existence of a contractual relationship, however. Plaintiff's allegations make it clear that she believes Dr. Prabhakar was motivated by sex, race, and national origin discrimination in his behavior toward her, including his conduct with respect to her assigned office space. She alleges that "on account of Plaintiff's sex, race and national origin, Prabhakar . . . [d]elay[ed] and resist[ed] providing Nanda with a suitable lab in which to conduct her research, after Prabhakar took for himself the lab which had been promised to Nanda." (Complaint, Count II ¶23(b).) Because the tortious interference charge cannot stand alone without the improper motivation of conduct prohibited by the Human Rights Act, the claim is inextricably linked to the Human Rights Act, which provides an exclusive remedy. *See Welch v. Illinois Supreme Court*, 322 Ill. App. 3d 345, ___ N.E. 2d ___, 2001 WL 618588, at *7 (3d Dist. June 4,

2001).

The court concludes that Plaintiff's tort claim is preempted by the Illinois Human Rights Act. Defendants' motion to dismiss Count III is therefore granted.

## CONCLUSION

Defendants' motion to dismiss the Title VII claims (Count I) for lack of jurisdiction is denied. Their motion to dismiss claims under Count II is granted with respect to damages claims, but denied with respect to the request for injunctive relief. Defendant Prabhakar's motion to dismiss Count III (Doc. No. 54-1) is granted.

ENTER:

Dated: August 21, 2001

REBECCA R. PALLMEYER
United States District Judge