Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4757 | **DATE** | 3/15/2002 |
| **CASE TITLE** | Navreet Nanda vs. Bd. of Trustees of the University of Illinois, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion (Doc. 69-1) is denied without prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | 2 number of notices | |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | 3-18-02 date docketed | |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | docketing deputy initials | 110 |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | 3/15/2002 date mailed notice | |
| ETV | courtroom deputy's initials | 02 MAR 15 PM 2:09 Date/time received in central Clerk's Office | ETV mailing deputy initials |

| | |
|---|---|
| NAVREET NANDA, Ph.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 00 C 4757 |
| ) | |
| BOARD OF TRUSTEES OF THE ) | Judge Rebecca R. Pallmeyer |
| UNIVERSITY OF ILLINOIS, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This action has been pending since August 4, 2000, when Plaintiff Navreet Nanda, a professor at the University of Illinois at Chicago ("UIC"), filed suit against UIC officials. Plaintiff claims UIC discriminated against her on the basis of her sex, race, and national origin when they issued a terminal contract, effectively terminating her employment. Before the court now is Plaintiff's June 26, 2001 motion asking the court to order Defendants to pay her salary from a government research grant and reimburse her for payment of dues for membership in the American Association of Immunologists.

## DISCUSSION

An individual who proves employment discrimination is entitled to a broad range of remedies, including injunctions, reinstatement, backpay, lost benefits, and attorney's fees under § 706(g) of the Civil Rights Act of 1964. 42 U.S.C. § 2000e-5(g)(1). *See Pollard v. E.I. du Pont de Nemours & Co.*, 121 S. Ct. 1946, 1949 (2001). Plaintiff has not yet proven her claims of discrimination, but seeks preliminary injunctive relief. In assessing whether such relief is warranted, the court must determine whether

Plaintiff has demonstrated that (1) she has a reasonable likelihood of success on the merits of the underlying claim; (2) no adequate remedy at law exists; (3) she will suffer irreparable harm if the preliminary injunction is denied. If Plaintiff meets her burden on these three conditions, the court will consider (4) whether the irreparable harm that she will suffer without injunctive relief is greater than the harm Defendants will suffer if the preliminary injunction is granted. Finally, the court determines (5) whether the preliminary injunction will harm the public interest. *Anderson v. U.S.F. Logistics (IMC), Inc.*, 274 F.3d 470, 474-75 (7th Cir. 2001). Preliminary injunctions are "disfavored in the employment context." *Id.* The Seventh Circuit has observed that "interlocutory relief in employment-discrimination cases should be rare." *Hetreed v. Allstate Ins. Co.*, 135 F.3d 1155, 1158 (7th Cir. 1998) citing *Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1453 (7th Cir. 1995); *Shaffer v. Globe Protection, Inc.*, 721 F.2d 1121 (7th Cir. 1983); *Ciechon v. Chicago*, 634 F.2d 1055, 1057-58 (7th Cir. 1980); *EEOC v. Janesville*, 630 F.2d 1254, 1258 (7th Cir. 1980).

Plaintiff believes her circumstances warrant such rare relief. She sought a preliminary injunction enjoining the termination of her faculty employment contract, and the court heard evidence in support of that motion over several days in the fall of 2000. When it became clear that disputes of material fact would likely preclude summary judgment on at least some of Plaintiff's claims, the court encouraged Plaintiff to withdraw her motion for a preliminary injunction in favor of proceeding promptly to a jury trial on her employment claims. The parties have prepared for trial, but the matter is currently stayed pending Defendants' appeal to the Seventh Circuit of this court's August 21, 2001 decision overruling UIC's Eleventh Amendment objection to

2

Plaintiff's Title VII claims.

Plaintiff's renewed motion seeks a narrower injunctive order: She asks the court to direct UIC to make payments to her from a research grant awarded to UIC to support her research. Plaintiff's motion does not specifically address the five factors relevant to a motion for preliminary injunction. Instead, she argues that the court should grant this motion for three reasons: First, she points out that the National Science Foundation ("NSF"), which awarded this research grant, authorizes payment of a researcher's salary during summer months in its Grant Policy Manual. Second, she contends that an NSF official who is aware that Plaintiff is no longer an employee of UIC has nevertheless confirmed that UIC is "responsible" for paying Plaintiff for work she performs on the grant. Finally, Plaintiff urges that Defendants are obliged to pay her salary pursuant to an agreement she reached with them in August 2000. The court will address these arguments in turn.

**Grant Policy Manual**

The NSF award was made to UIC for a project in which Plaintiff is the principal investigator. As Plaintiff points out, the NSF Grant Policy Manual provides that: "[d]uring the summer months... salary is to be at a monthly rate not in excess of the base salary divided by the number of months in the period for which the base salary is paid." (NSF Grant Policy Manual, Defendants Exhibit ("Def. Ex.") 3, ¶ 611.1(b)(2).) This provision, however, merely refers to the maximum rate of pay that a researcher may be paid during the summer months and demonstrates that NSF policy permits faculty members to receive a salary under its grants during those months. In the court's view, it does not address Plaintiff's claimed right to the salary in this case,

3

where UIC, the grantee under the grant, has terminated her status as a faculty member.

**Inquiry to NSF**

Plaintiff's second argument relies on an e-mail response she received from Ramona Lauda, an NSF Grants Officer, on July 3, 2001. Plaintiff contends Lauda's message confirms that UIC must pay Plaintiff's salary. Lauda's e-mail was sent in response to an inquiry from Plaintiff herself to Dr. Randolph Addison, who forwarded her question to Lauda. Plaintiff's e-mail, in its entirety, stated:

> Dear Dr. Addison, As you are aware, my grant through the NSF has been extended until March 2002. It is my belief that with this extension, I am permitted to withdraw two months salary for this summer. Please confirm that I am correct and that the rules of the NFS permit me to withdraw this salary. Specifically I would like to withdraw a total of $11,778 from my NSF grant as salary, as was budgeted in the original budget of the grant. Please confirm that this is permitted as per NSF rules. Thank you for your kind attention to this matter. Navreet Nanda.

Lauda's response, in pertinent part, stated:

> If you are asking whether you can "withdraw" funds prior to performing work, the answer is no, because NSF reimburses its grantees (the grantee is UIC) in accordance with NSF Grant Policy Manual Section 430. Specifically, see GPM 434, which states that the grantee must make an "actual cash disbursement" (pay for work performed, or for equipment purchased, or other allowable expenditures) and then will be reimbursed. In other words, if you perform research under the grant, UIC would be responsible for paying you in accordance with its institutional policies. IUC [sic] bills NSF quarterly for all NSF award-related expenditures via the Federal Cash Transaction Report. . . . Per NSF GC-1, Article 1, "The awardee has full responsibility for the conduct of the project or activity supported under the award. . . ."

Plaintiff urges that this response from Lauda constitutes an answer "in the affirmative" from NSF that she "should be allowed to withdraw from her NSF grant the money she has requested." (Plaintiff's Reply to Defendants' Response to Plaintiff's

4

Motion for Salary from NSF Grant, p. 2.) Plaintiff further argues that NSF gave this affirmative response with knowledge that she was no longer employed by UIC, because Plaintiff disclosed her termination (although she does not say to whom) when she applied for the No Cost Extension of her grant months before sending the inquiry about her summer salary to Dr. Addison. (*Id.*)

For several reasons, Plaintiff's interpretation of Lauda's response is, in this court's view, overly generous. First, Plaintiff urges that Lauda knew and took into account the fact that Plaintiff had been terminated when she sent this response, but Plaintiff has offered no basis for the court to reach the same conclusion. Although she asserts that she disclosed her termination in the application for a No Cost Extension of the grant, Plaintiff has not provided a copy of the application, nor even presented the language she used to notify NSF of her termination. The court is uncertain which NSF officials would have reviewed the request, or when the review took place. Plaintiff made no reference to her current employment status in her e-mail to Dr. Addison, nor did she frame her inquiry in terms of the impact that her termination might have on her rights to salary for the summer months. There is no reason for the court to assume that Lauda responded to any issue that was not set forth in Plaintiff's inquiry, and her response did not purport to address summer salary issues for terminated faculty members.

As for Plaintiff's assertion that Lauda confirmed that Plaintiff was entitled to the salary she seeks, the court believes this assertion overstates Lauda's response. Lauda did explain unequivocally that Plaintiff was not entitled to a salary prior to performing work under the grant. Plaintiff now emphasizes that she does not seek

5

compensation for prospective work, but the court understands her motion as a request that this court order UIC to pay her $2,944.50 on the first working day of July, August, September and October, on each occasion for work she would have performed the previous month. Plaintiff filed this motion on June 26, 2001. (Doc. No. 69.) Thus, at the time she sought this relief, Plaintiff could not have performed any more than 25% of the work that might entitle her to the requested salary. Plaintiff contends that she does not ask for compensation for prospective work, but her June 26 motion requests "[t]hat the University make available on the first working day of July, August, September and October, a check made payable to Plaintiff in the amount of $2,944.50. . . ."[1] Plaintiff has identified no legal basis for such relief, nor does Lauda's response provide such a basis grounded in NSF policy.

Nor can the remaining language in Lauda's response be construed as an affirmative statement that Plaintiff is entitled to the salary she seeks. Plaintiff emphasizes Lauda's statement that, "if you perform research under the grant, UIC would be responsible for paying you in accordance with its institutional policies," and that NSF would reimburse UIC for its actual cash disbursements. The court interprets this statement, particularly in the context set forth above, merely as an observation about the flow of money under the grant. Lauda does not purport to confirm that Plaintiff, although terminated, is entitled to a court order directing UIC to make future salary payments under the grant. To the contrary, Lauda appeared to be clarifying

---

[1] The court assumes that Plaintiff can demonstrate that she performed work during the four months for which she requests a salary. As of the date the motion was filed, however, no evidence of such work could have existed and none has been presented to the court to date.

that NSF was not the party directly responsible for paying Plaintiff's salary. Thus, Lauda's e-mail does not support Plaintiff's argument that she is entitled to the requested salary.

**Letter Agreement**

On August 30 and 31, 2000, the parties entered into a letter agreement prepared by Plaintiff's counsel that "memorializ[ed] . . . the agreement between [Plaintiff] and UIC regarding the biological materials in her laboratory, and her NSF grant." (August 30, 2000 Letter Agreement, Exhibit A to Plaintiff's Motion for Salary from NSF Grant.) The letter agreement has three provisions, only one of which is relevant to this issue (the other two address the storage and maintenance of Plaintiff's research materials and access to the laboratory). The relevant provision, in its entirety, reads:

> UIC will do nothing with respect to [Plaintiff]'s NSF grant until plaintiff's motion for preliminary injunction is ruled upon. [Plaintiff] is complying and will comply with any applicable NSF requirements regarding her grant. [Plaintiff] will obtain court approval for any purchases using grant funds during the pendency of her motion for preliminary injunction.

A fair reading of the first sentence quoted might be that UIC agrees not to take affirmative steps that would interfere with the continued funding of Plaintiff's research. In this court's reading, however, the relevant language does not prescribe the parties' conduct with respect to Plaintiff's salary under the grant. Plaintiff summarily states that she has "abided by this agreement and as such requested permission from this Court to withdraw a salary from her grant account." Again, however, the agreement does not use the word "salary," nor does it include any mention of Plaintiff's pay, compensation, wages, income, stipend, or any other words indicative of an agreement by UIC to pay a salary to Plaintiff after her termination. The court

7

notes that it was Plaintiff's counsel who drafted the agreement. Had the parties' negotiations resulted in a firm commitment with respect to Dr. Nanda's salary disbursements, the court would expect it to be reflected in the language of this letter agreement. As worded, that letter does not satisfy the court that Plaintiff is entitled to be paid from the NSF grant to UIC.

**Miscellaneous NSF Grant Policy Manual Provisions**

In opposition to this motion, Defendants have submitted a copy of the NSF Grant Policy Manual. The court notes that at least two provisions in that document appear to be inconsistent with Plaintiff's request for relief. (NSF Grant Policy Manual, Def. Ex. 3.) First, Section 300(a) states that "[a] grantee [in this case UIC] has full responsibility for the conduct of the project or activity supported under an NSF grant and for the results achieved." Overall responsibility is clearly placed with the grantee, not the principal investigator. Second, and more importantly, according to Section 312.7, the grantee is allowed to remove the principal investigator and continue the project with a substitute principal investigator if it so desires. This language does not directly address the issue facing this court, but militates in favor of UIC's position: UIC was not obligated to maintain Plaintiff's status as principal investigator under the grant.

## CONCLUSION

Plaintiff's request for injunctive relief is, at bottom, a request for payment of her salary. The court recognizes equities that distinguish this request from a request for an award of backpay in other employment discrimination matters: It is the National Science Foundation, not the University itself, which has provided funding for Plaintiff's

8

research, albeit through the employing institution. Further, the court recognizes that Plaintiff's status as a funded researcher may well be critical to her academic reputation and her hope of obtaining appropriate employment. Nevertheless, the court is not persuaded that the arguments she has made in this motion meet the difficult burden of showing she is entitled to a preliminary injunction. The motion (Doc. No. 69-1) is denied without prejudice to an award of appropriate relief, if she is able to prove her civil rights claims at trial.

ENTER:

Dated: March 15, 2002

REBECCA R. PALLMEYER
United States District Judge