Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4757 | **DATE** | 7/12/2002 |
| **CASE TITLE** | Navreet Nanda, Ph.D. vs. The Board of Trustees of The University of Illinois, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 7/26/2002 at 9:00 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendants' motion to dismiss Plaintiff's First Amended Complaint (Doc. No. 108-1) is granted with respect to the University as a named Defendant for Count II, and otherwise denied. Defendants are directed to file their Answer within twenty-one-days.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | | **Document Number** |
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | JUL 16 2002 | | |
| | Notified counsel by telephone. | | date docketed | | 115 |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | 7/12/2002 | | |
| | | | date mailed notice | | |
| ETV | courtroom deputy's initials | 02 JUL 15 PM 5:08 | ETV | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

| | | |
|---|---|---|
| NAVREET NANDA, PH.D., | ) | **DOCKETED** |
| Plaintiff, | ) | JUL 1 6 2002 |
| v. | ) No. 00 C 4757 | |
| THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, *et al.* | ) Judge Rebecca R. Pallmeyer | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Navreet Nanda was employed by the University of Illinois as a professor from 1996 until 2000. In this lawsuit against the Board of Trustees of the University of Illinois (hereinafter "University") and five individual University officials, Plaintiff alleges that Defendants violated her constitutional rights and discriminated against her on the basis of her sex, race, and national origin when they gave her a terminal contract in August 1998, which ultimately ended her employment on the University faculty in August 2000.

Plaintiff filed her original complaint on August 4, 2000, seeking a preliminary injunction to restore her status on the University faculty. The original complaint included three counts. In Count I, Plaintiff invoked Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(2)(a)(1) and (2) against the University. In Count II, she alleged claims against the individual Defendants in their official capacities under 42 U.S.C. § 1983 for deprivation of her right to equal protection of the laws. In Count III, Plaintiff included a common law tort claim against one of the individual Defendants, Bellur Prabhakar, for intentional interference with her contractual relationship with the University. Defendants moved to dismiss the original complaint in April 2001. This court denied the motion to dismiss Count I; granted Defendants' motion to dismiss Count II with respect to damages, but denied the motion with respect to injunctive relief; and granted Defendants' motion to dismiss Count III.[1] *See Nanda v. Board of Trustees of the University of Illinois*, No. 00 C 4757, 2001 WL 967518

---

[1] The rulings of the court adverse to Defendants are currently pending on appeal before the United States Court of Appeals for the Seventh Circuit, docket no. 01-3448.

(N.D. Ill. Aug. 21, 2001).

In her First Amended Complaint, Plaintiff left Count I as in the original, but changed the § 1983 claim in Count II to include the University as a named Defendant and to assert that claim against the individual Defendants in their individual, rather than official, capacities. Plaintiff did not reassert the original Count III in any form. Defendants moved to dismiss Plaintiff's First Amended Complaint in its entirety. For the reasons discussed below, Defendants' motion is granted in part and denied in part.

## DISCUSSION

### A.  Standard of Review

On a Rule 12(b)(6) motion to dismiss, the court considers all allegations in the complaint to be true and draws reasonable inferences in the plaintiff's favor. *Jacobs v. City of Chicago*, 215 F.3d 758, 765 (7th Cir. 2000). There is no heightened pleading standard for civil rights claims alleging liability under § 1983. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993). Instead, a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss, a pleading need "only contain enough 'to allow the court and the defendant to understand the gravamen of the plaintiff's complaint.' " *McCormick v. City of Chicago*, 230 F.3d 319, 323-24 (7th Cir. 2000) (quoting *Payton v. Rush Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999)). A complaint alleging discrimination is not required to plead evidence sufficient to establish a prima facie case of liability. *See Swierkiewicz v. Sorema N.A.*, 122 S.Ct. 992, 997 (2002); *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998).

### B.  Count I

Defendants' motion preserves their objection to Plaintiff's Title VII claim reasserted as Count I of Plaintiff's First Amended Complaint. (Defendants' Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure

(hereinafter "Defendants' Motion") ¶ 1.) Specifically, Defendants argued in their earlier motion that claims for money damages under Title VII are barred by the Eleventh Amendment. This court rejected that argument in its earlier Memorandum Opinion and Order, and the matter is now on appeal. For the reasons set forth in the court's earlier opinion, Defendants' motion with respect to Count I is denied.

## C. Count II: University Defendant

Plaintiff brings Count II of her First Amended Complaint against Defendant University and against the individual Defendants, Prabhakar, Moss, Hoffman, Broski, and Stukel, in their individual capacities. Defendants move to dismiss Count II on several grounds. First, Defendant University argues that Count II must be dismissed as against it because the University is not a "person" for purposes of 42 U.S.C. § 1983. The Supreme Court has made it clear that § 1983 did not abrogate the states' Eleventh Amendment immunity, *Quern v. Jordan*, 440 U.S. 332 (1979), and that a state is not a "person" within the meaning of § 1983, *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64 (1989). The University is an agency of the State of Illinois and, for Eleventh Amendment purposes, state agencies are treated the same as states. *Kroll v. Board of Trustees of Univ. of Illinois*, 934 F.2d 904, 907-08 (7th Cir. 1991). The University therefore may not be named as a defendant in a § 1983 claim.

Plaintiff suggests that, having concluded earlier that a claim for injunctive relief may properly be brought against state officials, the court must now deny the University's motion to dismiss be denied. (Plaintiff's Response to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (hereinafter "Plaintiff's Response"), at 3.) As noted in this court's earlier opinion, a claim for injunctive relief may indeed be brought against state officials in their official capacities. *See Will*, 491 U.S. at 71, n.10. Aside from this narrow exception, however, the Supreme Court has ruled that, as a matter of statutory interpretation, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id.* at 71. In the face of the Supreme Court's unequivocal

holding, this court is not inclined to construe the exception for injunctive relief in official capacity suits to allow a claim to be brought directly against the University. *See also Kentucky v. Graham*, 473 U.S. 159, 167, n.14 (1985) (noting that a state cannot be sued directly in its own name, regardless of the relief sought, unless the state's Eleventh Amendment immunity has been waived or abrogated by Congress).

In the alternative, Plaintiff argues that Defendants waived their right to assert that the University is not a "person" for purposes of § 1983 by failing to raise the issue in their motion to dismiss Plaintiff's original complaint. (Plaintiff's Response, at 4.) As Defendants point out, however, Plaintiff did not name the University as a defendant in Count II of her original complaint. The University had no need to address the issue of whether it is a proper defendant for purposes of Plaintiff's § 1983 claim until that issue was put before the court by way of an amended pleading.[2] (Defendants' Reply Brief in Support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (hereinafter "Defendants' Reply"), at 3.) Defendants' motion to dismiss the University as a party from Count II of Plaintiff's First Amended Complaint is granted.

### D. Count II: Prabhakar, Moss, Hoffman, Broski and Stukel

Defendants argue that Count II should be dismissed as against the individual Defendants for four reasons:

1. Plaintiff has failed to allege sufficient facts to support a claim of disparate treatment, (Defendants' Motion ¶ 4; Defendants' Memorandum of Law in Support of Their Motion to Dismiss Nanda's First Amended Complaint (hereinafter "Defendants' Memorandum"), at 6-7);

2. Plaintiff's allegations are insufficient to sustain individual capacity claims against supervisory officials, Defendants Moss, Hoffman, Broski and Stukel, (Defendants' Memorandum, at 7-10);

---

[2] In addition, Defendants' motion in this regard can be deemed to be a challenge to this court's subject matter jurisdiction, a matter that can be raised and must be entertained by this court at any time.

4

3. Plaintiff's allegations demonstrate there can be no causal connection between the alleged activities of the Defendants and the injuries claimed, (Defendants' Motion ¶ 5; Defendants' Memorandum, at 10-13);

4. Defendants Moss, Hoffman, Broski and Stukel are entitled to qualified immunity from claims for damages, (Defendants' Motion ¶ 6; Defendants' Memorandum, at 13-15).

The court addresses these arguments in turn.

### 1. Failure to Allege Sufficient Facts.

First, Defendants claim that Plaintiff's allegations are insufficient to demonstrate that she was treated differently than similarly situated individuals. (Defendants' Memorandum, at 7.) More precisely, they argue that this court ought to dismiss the claim because Plaintiff fails to explicitly describe treatment different from that received by "other non-tenured male Caucasian assistant professors." (Defendants' Reply, at 4.) This argument attempts to impose requirements beyond those set down in Rule 8(a)(2) and mandated by the Supreme Court, see *Leatherman*, 507 U.S. at 164, and the Seventh Circuit, see *McCormick*, 230 F.3d at 323-24. As the Supreme Court has explained, "This Court has never indicated that the requirements for establishing a prima facie case . . . also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Swierkiewicz*, 122 S.Ct. at 997.

In *Bennett*, faced with almost precisely the same situation confronting the court here, the Seventh Circuit noted as follows:

> Because racial discrimination in employment is "a claim upon which relief can be granted", this complaint could not be dismissed under Rule 12(b)(6). "I was turned down for a job because of my race" is all a complaint has to say. Because success on a disparate-treatment approach under Title VII of the Civil Rights Act of 1964, or under the equal protection clause of the fourteenth amendment, enforced via 42 U.S.C. § 1983, requires proof of intentional discrimination, a plaintiff might want to allege intent--although this is implied by a claim of racial "discrimination." Rule 9(b) provides: "Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Bennett's complaint contains a general allegation of intent, which need not be elaborated.

153 F.3d at 518.

Plaintiff alleges that Defendants "treated [her] differently." (First Am. Compl. ¶¶ 23, 24.) In

5

Exhibit D, Plaintiff's charge of discrimination to the EEOC, Plaintiff claimed that Prabhakar treated her more harshly than he treated similarly situated male colleagues.[3] Plaintiff alleges that, because of her sex, race and national origin, Defendant Prabhakar generally took adverse actions against her employment status and stature as a scientist and researcher, recommended she be issued a terminal contract, delayed and resisted providing her with suitable lab space, barred her from teaching during the 1999-2000 academic year, prevented her from serving on faculty and/or academic committees, denied her access to student assistance, and discouraged students from working in her lab, (First Am. Compl. ¶ 23); and that Defendants Moss, Hoffman, Broski and Stukel approved, permitted, facilitated and/or ratified such actions, (First Am. Compl. ¶ 24). Under relevant precedent, no greater detail is required. See *Swierkiewicz*, 122 S.Ct. at 997; *Bennett*, 153 F.3d at 518. Defendants' motion to dismiss Count II for failure to allege sufficient facts is denied.

### 2. Insufficient allegations against supervisory officials

Defendants also move to dismiss Count II with respect to Defendants Moss, Hoffman, Broski, and Stukel (the "Supervisory Defendants") on the ground that Plaintiff's allegations are insufficient to sustain individual capacity claims against supervisory officials.

In support of this argument, Defendants refer to the testimony presented at a fall 2000 evidentiary hearing on Plaintiff's motion for a preliminary injunction. The court notes, however, that the testimony from the preliminary injunction hearing is not admissible for purposes of Defendants' motion to dismiss. See *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1430 (7th Cir. 1996). Defendants cite Rule 65(a)(2) and Seventh Circuit precedent to argue that the testimony should be considered by the court. (Defendants' Reply, at 5-6). Rule 65(a)(2) allows a court to consider evidence from a preliminary injunction hearing in a trial on the merits, but is not

---

[3] Defendants object to this attempt to bolster the allegations in Count II with the EEOC charge and determination, calling it "bootstrapping." (Defendants' Reply, at 4.) The objection is overruled. Documents attached to the complaint are incorporated into it and become part of the pleading itself for all purposes. FED. R. CIV. P. 10(c); *International Marketing, Ltd. v. Archer-Daniels-Midland Co., Inc.*, 192 F.3d 724, 729 (7th Cir. 1999).

6

applicable to a motion to dismiss. The cited cases, *United States ex rel. Bell v. Director, Dept. of Corrections, State of Illinois*, 847 F.2d 399, 402 (7th Cir. 1988) and *United States v. Lott*, 854 F.2d 244, 249 (7th Cir. 1988), concern the introduction of testimony from preliminary injunction hearings in criminal trials based on the indicia of reliability such evidence bears. Admitting prior testimony for purposes of a trial on the merits, however, is an altogether different proposition from admitting it for purposes of a motion under Rule 12(b)(6).[4]

In addition, although the court need not ignore facts alleged in a complaint that undermine the plaintiff's position for purposes of a motion to dismiss, see *Gray v. Dane County*, 854 F.2d 179, 182 (7th Cir. 1988), nothing on the face of Plaintiff's complaint undermines her straightforward allegations that Defendants are liable for their own conduct.

Defendants argue that, insofar as the Supervisory Defendants allowed Plaintiff to pursue her grievance within the procedures provided by the University, (First Am. Compl. ¶¶ 15-18), the allegations in ¶ 24 of the First Amended Complaint cannot possibly be true. Defendants are correct that, "[the Supervisory Defendants'] failure to sustain [Plaintiff's] complaint does not mean they approved or ratified the alleged discrimination," (Defendants' Memorandum, at 9), but neither does their having allowed Plaintiff to avail herself of University procedure mean they did *not* approve or ratify the alleged discrimination. The essence of Plaintiff's charge against the Supervisory Defendants is that they knew of Prabhakar's discriminatory conduct and "facilitated, approved or turned a blind eye" with deliberate or reckless disregard for her constitutional rights. (First Am. Compl. ¶ 24.) If Defendants did "facilitate" discrimination, they may be individually liable for this

---

[4] Even if the evidence from the preliminary injunction hearing supports Defendants' position, it cannot be considered by the court for purposes of ruling on Defendants' motion without treating the motion as one for summary judgment and giving the parties the opportunity to present supplementary material. FED. R. CIV. P. 12(b)(6); *Jacobs*, 215 F.3d at 766 (district court is required either to not consider extraneous submissions for purposes of motion to dismiss, or to convert the motion to one for summary judgment and provide parties opportunity to submit supplementary materials). Defendants styled their motion as one for dismissal pursuant to Rules 12(b)(1) and 12(b)(6), and nothing precludes them from submitting a motion for summary judgment pursuant to Rule 56 should they choose to do so.

activity.

In *Jones v. City of Chicago*, 856 F.2d 985, 988 (7th Cir. 1988), cited by the Defendants, the plaintiff brought suit against a number of police officers and the City of Chicago under § 1983, charging false arrest, false imprisonment, intentional infliction of emotional distress, malicious prosecution, and conspiracy to commit such torts. Based on evidence that three of the defendant supervisors had hid exculpatory evidence, intentionally misled another officer attempting to protect plaintiff's rights, and signed a deceitful report for use in the prosecution of plaintiff, the court affirmed a verdict of supervisory liability. *Id.* at 993.

The *Jones* court relied on the same standard for supervisory liability advanced by the Defendants in this case, "knowingly, willfully or at least recklessly" causing the alleged deprivation by action or failure to act. *See also Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986). In *Rascon*, plaintiff brought suit on behalf of her dead husband under § 1983 for injuries he sustained during a beating by corrections officers at the Cook County Correctional Facility. *Id.* at 271. Plaintiff named the executive director of the Cook County Department of Corrections as a defendant, alleging that he operated the part of the Correctional Facility in which plaintiff's husband was beaten without the established disciplinary system used everywhere else in the facility, thereby allowing an informal system of physical summary punishment to fill the void. *See id.* at 275. The court noted that, if supported by competent evidence after a fair trial, plaintiff's charge could support a finding of individual and official liability. *Id.*

Although perhaps not as blatant as the misconduct ultimately shown at trial in *Jones*, Plaintiff's allegations are sufficient to meet the *Rascon* standard for liability in supervisory officials: she alleges that the Supervisory Defendants acted "with deliberate or reckless disregard of [her] constitutional rights." (First Am. Compl. ¶ 24.) *See Rascon*, 803 F.2d at 274; *see also Doyle v. Camelot Care Centers, Inc.*, 160 F. Supp.2d 891, 901 (N.D. Ill. 2001) ("In order to state a claim upon which relief can be granted . . . [plaintiffs] must be prepared to show that Defendants

8

personally violated their rights and were not merely the supervisors of those who violated their rights, nor merely negligent in those violations"). Defendants' motion to dismiss Count II as against the Supervisory Defendants for insufficient allegations is denied.

### 3. No causal connection between activities and harms alleged

As a third ground for dismissal of Count II, the individual Defendants argue that Plaintiff's allegations demonstrate there can be no causal connection between the alleged activities of Defendants and the injuries claimed. Defendants claim that the University caused the terminal contract to be issued to Plaintiff. Thus, according to Defendants, they are not liable, whatever their motives, for the harm of which Plaintiff complains.[5] (Defendants' Memorandum at 11.)

Plaintiff asserts that Defendants Prabhakar and Moss each recommended to the University that Plaintiff be given a terminal contract, and that Defendants Hoffman, Stukel, and Broski each in turn upheld a hearing officer's decision denying Plaintiff's grievance. (First Am. Compl. ¶¶ 12-18.) Plaintiff alleges that, because of her sex, race and national origin, Defendant Prabhakar recommended she be issued a terminal contract, delayed and resisted providing her with suitable lab space, precluded her from teaching during the 1999-2000 academic year, prevented her from serving on faculty and/or academic committees, denied her access to student assistance, discouraged students from working in her lab, and generally took adverse actions against her employment status and stature as a scientist and researcher. (Id. ¶23.)

Plaintiff further alleges that, because of her sex, race and national origin, Defendants Moss, Hoffman, Broski, and Stukel, "facilitated, approved or turned a blind eye" to Defendant Prabhakar's actions. (First Am. Compl. ¶ 24.) Moreover, Plaintiff alleges, Defendants Moss, Hoffman, Broski,

---

[5] Defendants also argue that the University's decision to extend Plaintiff's terminal contract by one year breaks the chain of causation. (Defendants' Memorandum, at 12.) This argument is unpersuasive. Defendants do not suggest that the one-year extension was intended to reinstate Plaintiff or permit her to "start over." In any event, if the Defendants are otherwise liable for causing Plaintiff to be unlawfully issued a termination contract, the added year of employment under that very same contract cannot be a superseding cause as a matter of law.

9

and Stukel directly denied her the opportunity to teach during the 1999-2000 academic year and generally took adverse actions against her employment status and stature as a scientist and researcher. (*Id.* ¶¶ 24(c), 24(g).)

In the court's view, Defendants' argument is therefore flawed in two respects. First, although none of the individual Defendants personally discharged the Plaintiff, the possibility that the University would carry out their recommendations was presumably the intended result. It is reasonable to infer, and therefore this court must for purposes of the motion to dismiss, *Jacobs*, 215 F.3d at 765, that the University would not have acted but for the actions of Defendants. The court infers, further, that the University typically honors recommendations of this sort. That is, if the University was no more than a rubber stamp for the Defendants' recommendations, Defendants could be deemed to have caused the issuance of the terminal contract.

In addition, Plaintiff's allegation in ¶ 24 that Defendants Hoffman, Broski, and Stukel treated her differently and took adverse actions against her employment on the basis of her sex, race and national origin, should be read in concert with the factual assertions in ¶¶ 15-18 that each of the three Defendants in turn upheld the decision denying Plaintiff's grievance. This suggests that the improper motivations attributed to Defendants Hoffman, Broski, and Stukel tainted determinations that might otherwise have resulted in the revocation of the terminal contract of which Plaintiff complains. As such, it is not clear from the face of Plaintiff's First Amended Complaint that she will be unable to meet the causation requirement under § 1983 for her claims against Defendants.

In this way, the Plaintiff's allegations are distinguishable from the cases cited by Defendants. In *Taylor v. Brentwood Union Free School District*, 143 F.3d 679 (2d Cir. 1998), the defendant school principal was found not liable for a one-year suspension of a teacher. The principal reported a pair of incidents to the school district, which then performed a full and independent investigation and, without any input from the principal, made a decision to file the charges which resulted in the harm complained of by the plaintiff. *Id.* at 687. In these circumstances, the court found "no basis

10

for concluding that any ill motives [the defendant] may have had impacted the decision to suspend [the plaintiff]." *Id.*

The decision in *Taylor* followed from the Second Circuit's prior decision in *Jeffries v. Harleston*, 52 F.3d 9 (2d Cir. 1995). In *Jeffries*, two of the defendants arranged for a Board of Trustees vote on limiting the term of the plaintiff, a tenured professor, as department chair in response to a controversial speech the plaintiff had given. *Id.* at 11. Those two defendants themselves did not vote, but the proposal passed. *Id.* The jury found that the votes of at least nine board members – a clear majority – were based on legitimate motives, but that as many as six other defendants (the "Harleston defendants"), including the two agenda-setting, non-voting defendants, acted from tainted motives. *Id.* The court found that the Board's "votes based on legitimate grounds constituted a superceding cause breaking the causal chain between the tainted motives" of the defendants and the decision to limit the plaintiff's term. *Id.* at 14. This finding was based, however, on the court's conclusion that there is "no reasonable possibility that the six Harleston defendants tainted the vote with whatever retaliatory motives they may have had." *Id.* A similar conclusion here, that the improper motivations allegedly harbored by the Defendants did not taint the decision-making processes leading to the issuance of the terminal contract to the Plaintiff and the rejection of Plaintiff's grievance as a matter of law, is clearly impossible given the court's obligation to presume the truth of all allegations contained in Plaintiff's First Amended Complaint.

Second, the Defendants' causation argument is flawed to the extent that it assumes that the issuance of a terminal contract is the only injury claimed by Plaintiff. As Plaintiff points out, she claims several harms were caused by the Defendants in addition to the issuance of the terminal contract. (Plaintiff's Response, at 11.) As noted, Plaintiff alleges that, because of her sex, race and national origin, Defendant Prabhakar generally took adverse actions against her employment status and stature as a scientist, researcher, and faculty member, and that Defendants Moss, Hoffman,

Broski, and Stukel approved, permitted, facilitated and/or ratified such actions, in addition to being responsible for denying Plaintiff the opportunity to teach during the 1999-2000 academic year. (First Am. Compl. ¶¶ 23-24.) As alleged in Plaintiff's First Amended Complaint, these harms were directly caused by the actions of the Defendants.[6] In addition, they may lend further support to her position that the issuance of the terminal contract was caused by the Defendants if their conduct, e.g., denying Plaintiff access to students and barring her from academic committee service, gave the University added grounds on which to base its decision to issue her a terminal contract. Thus, Plaintiff's allegations are adequate to state a claim that Defendants harmed her even if the University did not act entirely on their recommendations.

### 4. Qualified immunity

Finally, Defendants move to dismiss Count II against the Supervisory Defendants on the ground of qualified immunity. Qualified immunity is a defense against individual liability for actions taken by state officials performing discretionary functions in their official capacity. Officials enjoy qualified immunity if their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Jacobs*, 215 F.3d at 766 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To evaluate a claim of qualified immunity, the court must engage in a two-step analysis: (1) determine whether the plaintiff's claim states a violation of her constitutional rights; (2) determine whether those rights were clearly established at the time the violation occurred. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Jacobs*, 215 F.3d at 766.

With regard to the first step, Defendants claim that "[Plaintiff's] complaint was thoroughly investigated and that [she] was afforded a full and fair grievance proceeding at which to present her

---

[6] Defendants argue that Plaintiff's own allegations demonstrate that the Supervisory Defendants had no involvement in the other harms alleged; that they "only reacted to her allegations after the challenged conduct had allegedly occurred." (Defendants' Reply, at 7.) Although that may be true as a matter of fact, it is not demonstrated by the allegations in the complaint.

12

complaint."[7] (Defendants' Memorandum, at 15.) This is not, however, what Plaintiff alleges in her complaint. In ¶¶ 13-18, Plaintiff makes factual allegations to the effect that the Supervisory Defendants made certain recommendations or rejected appeals from her grievance. However, the only inference that can be drawn from ¶ 24 is that Defendants did not provide Plaintiff with full and fair proceedings, and in fact made decisions adverse to her on the basis of her sex, race and national origin. As discussed above in subsection D(2), the evidence from the preliminary injunction hearing is not considered by the court for purposes of a 12(b)(6) motion. Plaintiff has stated a violation of her constitutional rights.

Neither can Defendants prevail on the second step of the qualified immunity inquiry. A clearly established right is one where "[t]he contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also Erwin v. Daley*, 92 F.3d 521, 525 (7th Cir. 1996) (stating that a constitutional right is reasonably established if a closely analogous case has already established both the right at issue and its application to the factual situation at hand, or by showing the violation was so obvious that a reasonable person would necessarily have known about it). This standard ensures that officials have fair warning that their actions are unconstitutional. *See United States v. Lanier*, 520 U.S. 259, 270 (1997). Plaintiff's allegations of sex, race and national origin discrimination fall into that category of rights so obvious that a reasonable person would understand he was violating her constitutional rights. *See Brokaw v. Mercer County*, 235 F.3d 1000, 1022-23 (7th Cir. 2000). The evidence may not support Plaintiff's claims of sex, race or national origin discrimination, but the court has little difficulty concluding that

---

[7] Defendants characterize their arguments as going to the second step of the inquiry. What is urged in their motion, however, is that the Supervisory Defendants acted reasonably: "All they did then was act in accordance with their official duties and make discretionary judgments about the information that had been provided to them." (Defendants' Memorandum, at 15.) This is basically a reiteration of the argument that Plaintiff has failed to state a claim for deprivation of her constitutional rights, not an argument that race, sex or gender-based discrimination was not a clearly established right when the alleged violations occurred.

Defendants were well aware of Plaintiff's right to be free from such discrimination.

Concurring in *Jacobs*, Judge Easterbrook noted, "Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal." 215 F.3d at 775. Since dismissals pursuant to Rule 12 must be based on allegations, not evidence, a 12(b)(6) motion based on qualified immunity can only succeed where the plaintiff's complaint sets out facts showing that it is impossible to award relief. *Id.* at 775-76. As discussed above, the factual assertions in ¶¶ 13-18 of the First Amended Complaint – that Defendant Moss concurred in Defendant Prabhakar's recommendation to issue Plaintiff a terminal contract, and that Defendants Hoffman, Stukel and Broski each upheld the denial of Plaintiff's grievance – are not enough for Defendants to prevail at this point given the allegations in ¶ 24 that the Supervisory Defendants took affirmative, discriminatory actions against Plaintiff. While the facts may or may not ultimately support these claims, at this stage, Defendants' motion to dismiss Count II on the ground of qualified immunity must be denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's First Amended Complaint (Doc. No. 108-1) is granted with respect to the University as a named Defendant for Count II, and otherwise denied. Defendants are directed to file their answer within twenty-one days.

ENTER:

Dated: July 12, 2002

REBECCA R. PALLMEYER
United States District Judge

14